UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LAURIE DeNEUI and TERRY DeNEUI, ) | CIV. 07-4172 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER DENYING |
| ) | MOTION TO COMPEL |
| DR. BRYAN WELLMAN and WILSON ) | |
| ASFORA, P.C., d/b/a Sioux Falls ) | |
| Neurosurgical Associates, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

This matter is before the court pursuant to a complaint alleging medical malpractice filed by plaintiffs Laurie DeNeui and Terry DeNeui, husband and wife. Defendants Dr. Bryan Wellman and his employer, Wilson Asfora, P.C., filed a motion seeking an order from the court compelling Mr. and Mrs. DeNeui to provide certain discovery responses. [Docket No. 35]. This motion was referred to this magistrate judge for resolution by the Honorable Karen E. Schreier, Chief United States District Judge.

## FACTS

The facts, insofar as they are pertinent to the motion pending before this court, are as follows. Dr. Bryan Wellman performed an anterior cervical diskectomy and fusion procedure on Laurie DeNeui on October 18, 2005. Mrs. DeNeui alleges that Dr. Wellman performed that surgery negligently and

without obtaining Mrs. DeNeui's informed consent prior to the procedure. As a result of the procedure, Mrs. DeNeui allegs that she now suffers from difficulty breathing, swallowing, and speaking.

Regarding the informed consent claim, Mrs. DeNeui alleges that Dr. Wellman used a product in the procedure, Bone Morphogenetic Protein ("BMP-2"), that was not approved for use in cervical surgeries by the federal Food and Drug Administration ("FDA"). During her deposition, Mrs. DeNeui testified under oath that, had Dr. Wellman told her that he intended to use a non-FDA-approved product in her surgery, she would not have consented to the procedure. <u>See</u> Deposition of Laurie DeNeui at pages 52-54, Exhibit 1 to Docket No. 37.

When asked why this information would have caused her to withhold her consent, Mrs. DeNeui testified that her daughter, H.S., had been prescribed a non-FDA-approved drug at the age of five. <u>Id.</u> Although Mrs. DeNeui testified that she believed the drug harmed her daughter, she explicitly stated that no doctor had ever determined that the drug harmed her daughter. <u>Id.</u> Furthermore, Mrs. DeNeui testified that she was not a doctor. <u>Id.</u>

Thereafter, defendants served plaintiffs with discovery requests seeking to obtain all medical and hospital records of H.S. "from her date of birth to the present." H.S. was seventeen years of age at the time of Mrs. DeNeui's deposition, but the parties do not indicate her present age.

Mr. and Mrs. DeNeui objected to this discovery request on the basis that H.S. is not a party to this litigation, H.S.'s physical and mental conditions are not issues in this lawsuit, and that H.S.'s medical records are protected by the physician-patient privilege. Defendants now move to compel plaintiffs to produce H.S.'s medical records or, in the alternative, for an order precluding plaintiffs from offering any testimony regarding H.S.'s medical history or medical care at trial.

## DISCUSSION

**A.  Motion to Compel**

The scope of discovery in federal civil actions is set forth in Fed. R. Civ. P. 26(b)(1):

> (b) DISCOVERY SCOPE AND LIMITS.
>
> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

With regard to the assertion of a privilege as a bar to discovery, there are both procedural and substantive requirements that must be satisfied before the

privilege will be recognized. Procedurally, Fed. R. Civ. P. 26(b)(5)(A) outlines what must be done to assert a privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A).

Although the federal rules of civil procedure and evidence apply in diversity cases, Congress adopted the following rule as to evidentiary privileges:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

See Fed. R. Evid. 501. Although Rule 501 is a rule of evidence, and the current dispute concerns an issue of discovery, Rule 501 applies to all stages of all actions, cases, and proceedings, including discovery proceedings. See Fed. R. Evid. 1101(c); see also 3 Joseph M. McLaughlin, Jack B. Weinsten, and

4

Margaret A. Berger, Weinsten's Fed. Evidence, § 501.02[4] (2008).  A party asserting a privilege with regard to items sought in discovery has the burden of proving that a factual basis exists for that privilege.  Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997); Cottier v. City of Martin, WL 4568989, **2-3 (D.S.D. Dec. 19, 2007); Fed. R. Civ. P. 26(b)(5)(A).

Plaintiffs, through their objection to defendants' discovery request, have preserved their claim of privilege procedurally as required by Fed. R. Civ. P. 26(b)(5)(A).  Since the plaintiffs' complaint sets forth claims premised on state law, Fed. R. Evid. 501 requires that state law shall determine whether a substantive privilege applies in this case.

The physician-patient privilege, upon which plaintiffs rely, is codified in a South Dakota statute:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition, including alcohol or drug addiction, among himself, physician, or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

See SDCL 19-13-7.  The physician-patient privilege is waived statutorily if the physical or mental health of a person is at issue in a proceeding:

> In any action or proceeding . . . if the physical or mental health of any person is in issue, any privilege under § 19-13-7 is waived at trial or for the purpose of discovery under chapter 15-6 if such action or proceeding is civil in nature.  However, the waiver of the privilege shall be narrow in scope, closely tailored to the time

>period or subject matter of the claim.  If any party or the holder of the privileged records objects to the discovery of the privileged communication on the grounds that disclosure of the communication would subject the party to annoyance, embarrassment, oppression, or undue burden or expense and that the disclosure of the privileged communication is not likely to lead to the discovery of relevant evidence, the court shall conduct an in camera review of the privileged communication to determine whether the communication is discoverable.

See SDCL 19-2-3.

Defendants argue that when Mrs. DeNeui offered up her daughter's adverse experience with a non-FDA-approved drug as the reason that Mrs. DeNeui would have refused to consent to surgery using a non-FDA-approved product, Mrs. DeNeui waived the physician-patient privilege as to 17 years' worth of her daughter's medical records.  Defendants argue that, at age 17, H.S. is still a minor and, thus, her mother is in a position to waive or assert the privilege on her behalf.

Plaintiffs argue that Mrs. DeNeui did not waive the privilege on her daughter's behalf because Mrs. DeNeui testified to only *her own opinion* as to the cause and effect of her daughter having received a non-FDA-approved drug. When questioned, Mrs. DeNeui specifically disclaimed that any medical opinion was rendered concerning the causal connection between the drug and any behavior or damage her daughter experienced.  Instead, Mrs. DeNeui limited her testimony to her own opinion concerning that connection.

6

Plaintiffs point out that their burden in this litigation as to the informed consent claim is to show that Mrs. DeNeui would not have consented to the surgery had she been informed of Dr. Wellman's intent to use BMP-2 and the fact that it was not approved by the FDA for cervical procedures. See Wheeldon v. Madison, 374 N.W.2d 367, 376 (S.D. 1985). Plaintiffs argue that proving that H.S. did or did not suffer ill effects from a drug given to her over 12 years ago, and thus proving that Mrs. DeNeui is correct or incorrect about her opinion with regard to her daughter's experience, does not prove that Mrs. DeNeui would have given consent to the surgery with Dr. Wellman.

Finally, plaintiffs distinguish the cases cited by defendants, pointing out that, in those cases, the medical records the defendants sought had the potential to vitiate causation and, thus, to exonerate the defendants of liability. Here, by contrast, H.S.'s medical records do not have the potential to exonerate defendants. The only possible relevancy these documents would have to this litigation would be as to Mrs. DeNeui's credibility.

Defendants concede that plaintiffs do not have to prove that H.S. was harmed by a non-FDA-approved drug in order to prevail on Mrs. DeNeui's informed consent claim. Defendants concede that the salient issue is whether, if Mrs. DeNeui had been given all the facts, she would have given consent to Dr. Wellman to perform the surgery. Thus, what is relevant to this issue is *what Mrs. DeNeui's beliefs* were about her daughter's treatment with a non-

FDA-approved drug, not the objective medical facts concerning her daughter's treatment.

Numerous South Dakota Supreme Court cases illuminate South Dakota's physician-patient privilege and its waiver. In Shamburger v. Behrens, 380 N.W.2d 659, 660-663 (SD 1986), plaintiffs sued a doctor for malpractice and sought to obtain medical records of the defendant showing that he had been hospitalized for alcohol treatment subsequent to his surgery on the plaintiff. The South Dakota Supreme Court interpreted the physician-patient privilege to be waived whenever *the party to whom the privilege applied* put his or her own mental or physical condition in issue in the lawsuit. Id. at 662. In Shamburger, because it was the plaintiffs, not the defendant doctor, who put the doctor's physical condition into issue, the court held that the privilege was not waived. Id.

In Schaffer v. Spicer, 88 S.D. 36, 37-38, 215 N.W.2d 134, 136 (S.D. 1974), Betty Schaffer lost custody of her children to her ex-husband after Dr. Spicer, a psychiatrist with whom she had treated for 12 days, provided Ms. Schaffer's ex-husband with an 8-page, single-spaced affidavit divulging extensive information protected by the physician-patient privilege without Ms. Schaffer's prior permission. Ms. Schaffer then sued Dr. Spicer. Id. Dr. Spicer defended by arguing that Ms. Schaffer's participation in the custody proceedings involving her children constituted a waiver of the physician-patient

privilege. Id. at 39, 215 N.W.2d at 136. In construing South Dakota's physician-patient privilege, the court stated that "it is to be liberally construed in favor of the patient, . . . it must clearly appear there is an intention to waive, and a court will not run to such a conclusion." Id. at 39, 215 N.W.2d at 137 (quoting Hogue v. Massa, 80 S.D. 319, 123 N.W.2d 131 (S.D. 1963)). The court placed the burden of proving waiver of the privilege on the party seeking to set aside the privilege. Id. The Schaffer court held that Ms. Schaffer had not waived the privilege because, although she had communicated the fact that she had consulted Dr. Spicer and he had diagnosed her problems, Ms. Schaffer did not disclose the nature and extent of any illness or treatment. Id.

In the Hogue case, cited by the Schaffer court, a medical malpractice action was brought against a Sturgis physician. Hogue, 80 S.D. at 320-321, 123 N.W.2d at 132-133. The Sturgis physician then sought to take the deposition of a Rapid City physician who had cared for the plaintiff after the Sturgis doctor's care had terminated. Id. at 323, 123 N.W.2d at 133. The Sturgis doctor argued that, by bringing the action, the plaintiff had placed his physical condition in issue and thereby waived the physician-patient privilege. Id. The court reversed, holding that the plaintiff had not waived the privilege as to the Rapid City doctor because he had not urged the Rapid City doctor's

care as a basis for the malpractice action.  Id. at 325-327, 123 N.W.2d at 134-135.[1]

In Maynard v.Heeren, 563 N.W.2d 830, 832 (S.D. 1997), Cathy Maynard sued Raymond Heeren, asserting claims of invasion of privacy and intentional infliction of emotional distress for which she sought emotional distress damages.  Heeren sought Maynard's records from her psychotherapist and Maynard resisted, asserting the physcan-patient privilege.  Id. at 832-833.  The court noted that § 19-2-3 was "grounded in the theory that when a patient makes a claim or defense in litigation on the basis of the patient's condition, it would be unjust to deny the other party an opportunity to show the invalidity of that claim or defense." Id. at 835.  Here, because Maynard had placed her mental state in issue by requesting damages for emotional distress allegedly caused by the defendant, the court held that § 19-2-3 resulted in a statutory waiver of the privilege.  Id. at 835-836.  However, even though the privilege was waived by Maynard when she asserted that Heenen had caused her emotional

---

[1] In Wheeldon v. Madison, 374 N.W.2d 367 (S.D. 1985), by contrast, the defendants were allowed to present the testimony of plaintiff's subsequent physician where the physician restricted his testimony to a discussion of the medical records and treatment from the doctor who was being sued for malpractice.  Id. at 376-377.  Importantly, in Wheeldon, the subsequent physician whose testimony was at issue revealed nothing about his treatment of the plaintiff,  her condition while he treated her, or any communications she had made to him.  Id.  Thus, the testimony of the subsequent physician did not invade any matters that were protected by the physician-patient privilege concerning him and the plaintiff.  Id.

distress, the court noted that the trial court could still exercise discretion to hold an *in camera* hearing, to impose reasonable restrictions upon dissemination of the material, and to determine the relevancy of the material. Id.

In State v. Vandergrift, 558 N.W.2d 862, 862 (S.D. 1997), a defendant was charged with driving while under the influence. She refused a blood alcohol test, but such a test was subsequently conducted for purposes of medical treatment. Id. The state sought the results of the test and the trial court granted the state's request, reasoning that the physician-patient privilege was not a bar to the discovery because the defendant's physical state was in issue. Id. The South Dakota Supreme Court reversed, holding that the defendant's health was not at issue, but rather the issue was whether at a particular time she had suffered impairment from the temporary disorder of intoxication. Id. Unless the defendant raised her health as a defense to the prosecution, the privilege was held not to have been waived. Id.

In State v. Stuck, 434 N.W.2d 43, 53-54 (S.D. 1988), an eyewitness identified the defendant, who was accused of having stabbed the witness. The defendant sought the witness's medical records. Id. The court held that there was no issue as to the facts of the knife wound, its position, or angle, so that the physical condition of the victim was not in issue. Id. Therefore, SDCL § 19-2-3 did not operate to waive the physician-patient privilege based on the

11

victim's physical condition.  Id.  Thus, the defendant was not entitled to the victim's medical records, even though the victim had waived the privilege by providing copies of the records to the state.  Id.

The above cases demonstrate that the South Dakota Supreme Court interprets the physician-patient privilege liberally in favor of the patient. Vandergrift, 558 N.W.2d at 862; Stuck, 434 N.W.2d at 53-54; Shamburger, 380 N.W.2d at 660-663; Schaffer, 88 S.D. at 37-39, 215 N.W.2d 136-137; Hogue, 80 S.D. at 325-327, 123 N.W.2d at 134-135.  Where the patient puts her own mental or physical condition fairly in issue in a lawsuit, the privilege is statutorily waived.  Maynard, 563 N.W.2d at 832-836.  However, the court will not countenance others attempting to force a waiver by placing the patient's condition in issue where the patient herself has not placed it in issue. Vandergrift, 558 N.W.2d at 862; Shamburger, 380 N.W.2d at 660-663; Schaffer, 88 S.D. at 37-39, 215 N.W.2d at 136-137.

Here, the court concludes that the privilege applicable to H.S.'s medical records has not been waived, either by operation of statute or by action of Mrs. DeNeui.  H.S.'s mental and physical health are not elements of any claim or defense that any party is asserting in this action.  Instead, Mrs. DeNeui's physical and mental states are the issue and, derivatively, Mr. DeNeui's as to his loss of consortium claim.  Mrs. DeNeui's statements at her deposition asserted only her opinions as to the effect the non-FDA-approved drug had on

H.S.  Mrs. DeNeui specifically disclaimed that any physician's opinion supported her own.  Thus, aside from identifying the drug H.S. was prescribed and the condition for which it was prescribed, Mrs. DeNeui did not reveal any confidential communications or records of H.S.'s that would have been protected by the physician-patient privilege.

With so many South Dakota cases interpreting the South Dakota privilege, it is unnecessary to look outside of South Dakota for authority.  However, the court notes that the extra-jurisdictional cases cited by defendants in support of their motion to compel are not factually on point with the situation before this court.

In <u>Kunz v. South Suburban Hosp.</u>, 761 N.E.2d 1243, 1245 (Ill. App. 2001), parents sued a doctor on behalf of their son, who suffered from cerebral palsy, alleging malpractice in the course of their son's delivery.  Defendant produced an expert opinion to the effect that records from the mother's previous pregnancies and births would assist him in arriving at an expert opinion as to the cause of the son's cerebral palsy.  <u>Id.</u>  The court held that the mother had waived the physician-patient privilege as to the records concerning her pregnancies and deliveries for the older siblings by testifying that she had experienced spotting, cramping, and preeclampsia in her earlier pregnancies, just as she had with her disabled son's pregnancy, and that her first pregnancy resulted in a dropping of the fetal heart rate during delivery, just as had

happened with her disabled son during delivery.  Id. at 1248.  However, the court held that the mother had *not* waived the physician-patient privilege as to the subsequent medical records of the plaintiff's siblings, which were not discoverable.  Id. at 1249.  See also Vincent v. Connaught Laboratories, Inc., 131 F.R.D. 156, (E.D. Mo. 1990) (holding mother's pregnancy and birth records discoverable where mother asserted defendant's vaccine had caused her child's brain damage, but defendant claimed that mother may have possessed a blood condition that caused the child's damage).

Thus, the records of the earlier pregnancies and deliveries in Kunz and Vincent had direct application to the issues of causation of the defendant's liability in those cases.  The same cannot be said for H.S.'s records and Dr. Wellman's liability in this case.  Furthermore, no part of the DeNeui's damages in this case depend upon H.S.'s physical or mental state.

To similar effect is Scharlack v. Richmond Memorial Hosp., 477 N.Y.S.2d 184, 187-188 (1984), in which a mother who alleged that her child's birth defects were a result of the defendant doctor's malpractice, but where the mother had another child who suffered from the same birth defects and the mother had offered to make the medical records concerning this other child's diagnosis available to the defense.  Under these circumstances, the court held that the mother had waived the physician-patient privilege as to the other child with the same birth defects.  Id.  Importantly, the court held that this waiver

14

did not apply to medical records of two other children of the mother who did not suffer from any birth defects. Id.

Finally, Palay v. Superior Court, 22 Cal. Rptr. 2d 839, 844-845 (Cal. App. 2 Dist. 1993), held that the patient-litigant exception (i.e. statutory waiver of privilege based on placing one's physical or mental condition in issue), to the physician-patient privilege extends to prenatal records where the plaintiff is an infant alleging malpractice in the failure to treat a condition present at his birth. Thus, the court held that the mother's prenatal records were discoverable because the child, by filing suit, had waived his own privilege and the court held that that waiver extended to the prenatal records. Id. The court's holding was based on the "unique physical realities of pregnancy and childbirth" where a 16-month-old plaintiff's medical history included, as a practical matter, his medical condition while *in utero*. Id. at 845.

None of these cases stand for the proposition that when a party recites her own opinion as to another's experience with a medication as a basis for her assertion that she would not have undergone a particular procedure, she waives the physician-patient privilege as to 17 years' worth of the other person's medical records. It is clear that, under South Dakota law, Laurie DeNeui has the power to waive the physician-patient privilege on behalf of H.S.

15

In re D.K., 245 N.W.2d 644, 648 (S.D. 1976).[2]  It is equally clear that Laurie DeNeui has not affirmatively done so.  Neither has the privilege been statutorily waived pursuant to SDCL § 19-2-3.  The court concludes that defendants' motion to compel should be denied.

**B.    Motion *In Limine***

In the alternative to obtaining an order compelling the production of 17 years' worth of H.S.'s medical records, defendants seek an order *in limine* from the court precluding plaintiffs from "offering any testimony regarding [H.S.'s] medical history or care in support of any of the elements of their claim herein." Certainly, if plaintiffs were to introduce testimony at trial regarding H.S.'s medical records, they would be waiving the physician-patient privilege as to those records.  However, if Laurie DeNeui does no more at trial than she did at her deposition, that is, testify as to her own opinion concerning H.S.'s experience, no waiver will occur.  Further, there appears to be no prejudice to defendants to allow Mrs. DeNeui to testify in this manner.  Defendants will be able to examine Mrs. DeNeui at trial about the basis of her opinion, and the reasonableness of that opinion, just as they were free to so examine her at her deposition.

---

[2]The court may also waive the privilege on behalf of the minor *when it is not to the prejudice of the minor to do so*.  In re D.K., 245 N.W.2d at 649.

No order *in limine* as requested will be issued by the court at this time on the basis of the showing made by defendants. However, the defendants may revisit this issue with a motion *in limine* prior to the trial of this matter.

## CONCLUSION

The defendants' motion to compel [Docket No. 35] is denied as discussed more fully above.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 58(g)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require review by the district court.

Dated July 16, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE