UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LAURIE DeNEUI and TERRY DeNEUI, | ) | CIV. 07-4172 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION TO COMPEL |
| DR. BRYAN WELLMAN and WILSON ASFORA, P.C., d/b/a Sioux Falls Neurosurgical Associates, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

This matter is before the court pursuant to a complaint alleging medical malpractice filed by plaintiffs Laurie DeNeui and Terry DeNeui, husband and wife.  Defendants Dr. Bryan Wellman and his employer, Wilson Asfora, P.C., filed a motion seeking an order from the court compelling Mrs. DeNeui to attend an independent medical examination ("IME") with Dr. John C. Goldner, a neurologist, in Omaha, Nebraska, pursuant to Fed. R. Civ. P. 35. [Docket No. 58].  This motion was referred to this magistrate judge for resolution by the Honorable Karen E. Schreier, Chief United States District Judge.

## FACTS

The facts, insofar as they are pertinent to the motion pending before this court, are as follows.  Dr. Bryan Wellman performed an anterior cervical diskectomy and fusion procedure on Laurie DeNeui on October 18, 2005.

Mrs. DeNeui alleges that Dr. Wellman performed that surgery negligently and without obtaining Mrs. DeNeui's informed consent prior to the procedure. As a result of the procedure, Mrs. DeNeui alleges that she now suffers permanent impairment and disability, including difficulty breathing, swallowing, and speaking.

Plaintiffs have designated Dr. John C. Dowdle of Edina, Minnesota, as an expert witness as to Mrs. DeNeui's injuries and employability. Dr. Dowdle examined Mrs. DeNeui in Sioux Falls, South Dakota, on January 11, 2008. The Plaintiffs reside in Rushmore, Minnesota, approximately 53 miles from Sioux Falls.

In addition to Dr. Dowdle, Mrs. DeNeui has been examined by other physicians of her own choosing. She was examined by Dr. Smucker on August 20, 2007, in Iowa City, Iowa, a distance of approximately 339 miles from her home. On the next day, August 20, 2007, Mrs. DeNeui was examined by Dr. An in Chicago, Illinois, a distance of approximately 222 miles from Iowa City, and 524 miles from Rushmore. Mrs. DeNeui was also examined twice by Dr. Garvey in Minneapolis, Minnesota, on June 22, 2006, and again on October 9, 2006. Minneapolis is approximately 187 miles from Rushmore. In addition, Mrs. DeNeui has traveled to Sioux Falls, South Dakota, twice during the pendency of this lawsuit to attend depositions.

Defendants unilaterally scheduled an IME for Mrs. DeNeui with their expert, Dr. Goldner, on June 30, 2008, in Omaha and forwarded a check to cover Mrs. DeNeui's expenses for travel and lodging in order to attend the examination. Defendants also expressed a willingness to consider reimbursement for other expenses associated with Mrs. DeNeui's travel to Omaha upon receiving an itemization and supporting documentation for the expenses. The letter from defendants to Mrs. DeNeui's counsel advising Mrs. DeNeui of the IME appointment was dated June 18, 2008, only 12 days before the scheduled appointment.

By letter dated June 20, 2008, Mrs. DeNeui's counsel informed defendants that she was unwilling to attend the scheduled examination. Defendants offered to schedule the examination for another, more convenient, date since there had been short notice for the June 30th appointment. Mrs. DeNeui would still not consent to the examination. It is approximately 195 miles from Rushmore, Minnesota, to Omaha, Nebraska. Defendants thereafter filed this motion seeking to compel Mrs. DeNeui's attendance at an IME with Dr. Goldner.

## DISCUSSION

**A.     Meet-and-Confer Requirement**

Plaintiffs argue that defendants' motion to compel Mrs. DeNeui's IME with Dr. Goldner should be denied because defendants' counsel failed to

attempt to resolve this matter with plaintiffs' counsel prior to filing the motion. The court finds this argument to be without basis.

The record reflects that, after notifying plaintiffs' counsel of the appointment with Dr. Goldner and receiving plaintiffs' objection to that examination, defendants' counsel made a number of attempts to reach a compromise including offering to change the date of the examination and offering to cover a broader share of any out-of-pocket expenses incurred by plaintiffs. Finally, defendants' counsel notified plaintiffs' counsel of its intention to file the instant motion should compromise not be reached. Plaintiffs' counsel never retreated from its stated intention not to comply with defendants' request for the examination with Dr. Goldner. The court finds that defendants' counsel complied with the spirit of the rule requiring parties to attempt to reach a compromise of discovery disputes before filing a motion to compel. See Fed. R. Civ. P. 37(a)(1).

**B.     Motion to Compel**

Defendants argue that they are entitled to conduct an IME on Mrs. DeNeui because she has placed her physical condition in issue in this lawsuit. Plaintiffs resist the IME, arguing that defendants seek merely to delay this lawsuit and that it is not reasonable to require Mrs. DeNeui to travel to Omaha to undergo the IME.

1.  **Standard Applicable to Rule 35 Motions**

Rule 35 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

(a)   Order for an Examination.

    (1)   *In General.* The court where the action is pending may order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in custody or under its legal control.

    (2)   *Motion and Notice; Contest of the Order.* The order:

        (A)   may be made only on motion for good cause and on notice to all parties and the person to be examined; and

        (B)   must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

See Fed. R. Civ. P. 35(a). Once the examination has been performed, the examiner must produce a written report that details his examination findings including diagnoses, conclusions, and the results of any tests. See Fed. R. Civ. P. 35(b). This report must be made available to the party who submitted to the examination. Id. No patient-physician privilege applies to the report of the independent examination. Id.

A party seeking an order for a Rule 35 IME must show two things: (1) that the plaintiff has put her physical or mental condition "in controversy" and (2) that there is "good cause" for the IME. Schlagenhauf v. Holder, 379 U.S. 104, 117-118 (1964). The movant must show that "the condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Id. at 118. A mere showing of relevancy is insufficient to establish "good cause." Id. In addition, the court should consider whether the desired information can be obtained by other means than an IME. Id.

Even if a physical examination is warranted under Rule 35, the moving party has no absolute right to compel that examination by a particular physician of its own choosing. McKitis v. DeFazio, 187 F.R.D. 225, 227 (D. Md. 1999); Stinchcomb v. United States, 132 F.R.D. 29, 30 (E.D. Pa. 1990); 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, § 2234.2 at 485 (2d ed. 1994) (hereinafter "Wright & Miller"). However, if there is no serious objection to the examiner selected by the moving party, it is usually best to appoint the doctor of the moving party's choice. 8A Wright & Miller § 2234.2 at 485; Holland v. United States, 182 F.R.D. 493, 494-495 (D.S.C. 1998) (refusing plaintiff's request that the court appoint someone other than defendant's chosen physician to conduct the exam where there was no showing of personal bias on the part of defendant's physician nor

any allegation that the physician would use discredited or harmful techniques to examine the plaintiff); DeFazio, 187 F.R.D. at 227 (ordering IME with defendant's chosen physician where plaintiff raised no issues as to that physician's qualifications to conduct the IME).

The reason for such an approach is that the plaintiff is allowed to select his or her own doctor to testify as to the plaintiff's physical condition, so fairness dictates that the defendant have a similar right.  8A Wright & Miller § 2234.2 at 485.  Rule 35 is "to be accorded a broad and liberal treatment, to effectuate the purpose [of the rules of civil procedure] that civil trials in the federal courts no longer need be carried on in the dark."  Schlagenhauf, 379 U.S. at 114-115; Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 690 (10th Cir. 2007).

Mrs. DeNeui's objections to Dr. Goldner's examination of her have nothing to do with Dr. Goldner's qualifications nor does Mrs. DeNeui make any allegations of bias.  Rather, Mrs. DeNeui objects to the examination on the basis that (1) defendants unduly delayed in asking Mrs. DeNeui to submit to the examination, (2) Dr. Goldner is too far away from Mrs. DeNeui's home, and (3) all of plaintiffs' doctors agree that Mrs. DeNeui is permanently and totally disabled and she is currently receiving Social Security Disability benefits, so the question of Mrs. DeNeui's physical condition is not truly "in controversy." The court addresses these three arguments in reverse order.

### 2. Whether Mrs. DeNeui's Physical Condition is "In Controversy"

The third objection interposed by Mrs. DeNeui is the most easily dealt with. The Supreme Court has held that when a plaintiff in a negligence action asserts mental or physical injury, she "places that mental or physical injury clearly in controversy and provides the defendant with good cause [under Rule 35] for an examination to determine the existence and extent of such asserted injury." Schlagenhauf, 379 U.S. at 119. See also Holland, 182 F.R.D. at 494 (plaintiff in medical malpractice action who alleged disfigurement and total disability as a result of malpractice puts his physical condition in controversy for purposes of Rule 35 exam). Defendants are not bound to accept the opinions of Mrs. DeNeui's physicians on the question of the extent, permanence, or causation of her disabilities, nor is the factual question of Mrs. DeNeui's disability conclusively established due to the fact of her receiving disability benefits.[1] The court concludes that Mrs. DeNeui's physical condition is genuinely in controversy in this case.

### 3. Whether Travel to Omaha is Unduly Burdensome

As to Mrs. DeNeui's objection to having to travel 195 miles from her home in Rushmore, Minnesota, to Dr. Goldner's office in Omaha, Nebraska, the

---

[1]The situation presented in this case is different from that presented in Shumaker v. West, 196 F.R.D. 454, 457 (S.D. W. Va. 2000), wherein the court found the plaintiff's post-traumatic stress disorder was not "in controversy" where the defendant had already conducted numerous psychological tests on plaintiff confirming that she exhibited the condition.

court finds under the facts of this case that such travel is not unreasonable. First, the court notes that, even the pleadings submitted by plaintiffs in resistance to the Rule 35 motion show that there are only 7 neurologists who are not connected to the parties or this case residing in Sioux Falls who could potentially conduct the IME on Mrs. DeNeui. Defendants have represented generally that it is difficult to find physicians in Sioux Falls with the requisite expertise who are both willing to conduct the examination and to have that examination, and their testimony, involved in litigation.

The court finds defendants' allegations to be reasonable. Sioux Falls is not a large urban area and the doctors, certainly the neurologists, can be presumed to all know one another. In such a community, it would be uncomfortable to be asked to testify in a case involving one of one's own peers. Given that a Rule 35 movant should generally be allowed to have an IME conducted by a physician of its own chosing, the court will not displace Dr. Goldner on the basis that there are 7 neurologists available in Sioux Falls.

The size of the Sioux Falls medical community distinguishes this case from Stuart v. Burford, 42 F.R.D. 591, 592-593 (N.D. Ok. 1967). In that case, the court refused to require the plaintiff to attend an IME in Oklahoma City, Oklahoma, a distance of some 118 miles from plaintiff's home in Tulsa, Oklahoma, where some 40 doctors existed with the requisite expertise and specialty to conduct the IME requested by the defendant. Id. Significant to the

Stuart court's analysis was that Tulsa, where the plaintiff lived and the case was venued, was in a different judicial district than Oklahoma City: the former was in the Northern District of Oklahoma and the other in the Western District of Oklahoma. Id. This raised concerns for the court concerning compulsory process under Fed. R. Civ. P. 45. Id.

In another case, the court had no compunction about requiring the plaintiffs to travel great distances in order to attend IMEs in the district where they had elected to venue their case, and to do so at their own expense. See McCloskey v. United Parcel Service General Services Co., 171 F.R.D. 268 (D. Ore. 1997). See also Blount v. Wake Electric Membership Corp., 162 F.R.D. 102, 106-107 (E.D.N.C. 1993) (holding that defendants could compel plaintiff to undergo an IME in the judicial district where the case was venued, or in the judicial district where the plaintiff resided). Under the same-district-as-the-forum analysis in the McCloskey and Stuart cases, and given the small number of neurologists in Sioux Falls, Mrs. DeNeui could clearly be required to attend an IME in Rapid City, South Dakota, as that would be in the same district as the forum where she elected to venue her case. This would, of course, require Mrs. DeNeui to travel a much greater distance–approximately 392 miles–in order to attend such an IME.

This issue was discussed by the Arkansas Supreme Court in Reed v. Marley, 321 S.W.2d 193 (Ark. 1959). In that case, the defendant requested an

order requiring plaintiff to attend an IME in Tulsa, Oklahoma, through the case was venued in Arkansas. Id. at 194. The court held that the mere fact that the IME requested was out of state did not, by itself, render the request unreasonable. Id. at 195. Indeed, as in this case, the court noted that the plaintiff could be required to attend an IME in Arkansas that would require travel of much greater distances than the IME requested in Tulsa. Id. at 195-196.

The court deemed "unsound" the plaintiff's argument that she could not assert compulsory process against the Oklahoma physician. Id. at 195. The court pointed out that the examination was being conducted for the benefit of the defendant, not the plaintiff, so any risk that compulsory attendance at trial could not be secured was a risk accruing to the defendant. Id. Moreover, the court pointed out that while the physician might not be compelled to appear in person at the trial, plaintiff could certainly take his deposition and present his testimony via deposition at trial. Id.

Mrs. DeNeui has alleged that her physical condition makes it difficult for her to travel. She also alleges that her husband, the sole bread-winner in her family, would have to transport her to Dr. Goldner's office, which would require her husband to take time off from his job. Finally, Mr. and Mrs. DeNeui assert that they have a 10-year old child at home for whom a babysitter would have to be arranged in order for them to attend the appointment at Dr. Goldner's office.

The court accepts as true these allegations made by plaintiffs. However, the court notes that any inconvenience imposed on plaintiffs by requiring Mrs. DeNeui to meet with Dr. Goldner is ameliorated by several factors. First, Mr. DeNeui is also a named party in this lawsuit, so any inconvenience to him is part and parcel of the burden he himself has undertaken to bring these claims to trial. Second, defendants have offered to reimburse plaintiffs for any lost income Mr. DeNeui suffers as a result of having to transport Mrs. DeNeui to Omaha. Third, the court notes that the DeNeuis could take their child with them to Omaha, thus obviating the need to arrange for a babysitter in their absence.

Finally, the amount of travel and the timing of that travel, that Mrs. DeNeui has been willing to undertake on her own in order to secure medical testimony in support of her claims augers in favor of ordering this IME with Dr. Goldner. The same disabling conditions that Mrs. DeNeui alleges make travel to Omaha difficult for her existed when she traveled far more significant distances for her own ends. The only new condition appears to be low blood sugar. However, there is nothing in the record about Mrs. DeNeui's low blood sugar condition that would preclude her travel to Omaha. Also, in connection with the travel Mrs. DeNeui undertook at her own behest, presumably her husband also had to take time off of his job to transport her and presumably

the plaintiffs faced the same problem of what to do with their 10-year-old child when they undertook this earlier travel of their own choosing.

These facts distinguish this case from the facts in Blount, where the court refused to order the plaintiff to attend an out-of-district IME where the plaintiff was wheelchair-bound and had no means of transportation. Blount, 162 F.R.D. at 106-107. But even in Blount, although the district court did not require the plaintiff to travel to a judicial district unrelated to her district of residence or the district of venue of the case, travel within either of those judicial districts was suggested to be appropriate. Id.

The court finds the reasoning of the Reed court persuasive, as well as the practicalities of the facts presented. Given the distances Mrs. DeNeui has traveled at her own election while burdened with the same physical conditions she raises in opposition to defendants' Rule 35 motion, given the unique facts concerning the vast distances in our judicial district and the scarce population, the court concludes that it is not unreasonable to require Mrs. DeNeui to travel to Omaha for the IME requested by defendants.

**4.     Whether the Rule 35 Motion is Untimely**

Plaintiffs' final objection to defendants' Rule 35 motion is that it is untimely. The original scheduling order issued by the district court in this case established July 1, 2008, as the deadline for completing all discovery, including expert discovery. See Docket No. 15, ¶ 4. Under that order,

13

defendants were to disclose their experts and expert reports by May 2, 2008. Id. at ¶ 7.

By joint motion of all the parties in this case, the original deadlines in this case were twice extended. See Docket Nos. 20 & 21, 48 & 49. Under the final extension applicable to the instant motion, defendants' deadline for making their disclosure of expert opinions and reports was July 3, 2008. Defendants made their instant motion requesting both an order for a Rule 35 IME and also an extension of their expert-designation deadline on July 3, 2008.

Rule 6 of the Federal Rules of Civil Procedure controls the granting of an extension of time. That rule provides in pertinent part as follows:

> (b) Extending Time.
> (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> (A) with or without motion or notice if the court acts, or if a request is made, *before* the original time or its extension expires; or
> (B) on motion made *after* the time has expired if the party failed to act because of excusable neglect.

See Fed. R. Civ. P. 6(b)(1) (emphasis added). In this case, defendants filed their motion seeking an extension of the deadline for defendants' expert disclosures prior to the expiration of that deadline. Accordingly, the only issue presented to the court is whether "good cause" exists in support of that extension. The court need not address excusable neglect.

In <u>Shumaker v. West</u>, 196 F.R.D. 454, 455-457 (S.D. W. Va. 2000), the court denied as untimely the defendant's motion for an IME pursuant to Rule 35 where the defendant first requested plaintiff to submit to an IME only 15 days before the expert disclosure deadline, and filed its motion seeking to compel the IME a mere six days prior to that deadline.

In <u>Miksis v. Howard</u>, 106 F.3d 754, 758-759 (7th Cir. 1997), the defendants similarly sought to compel a Rule 35 IME after the discovery deadline had passed.  Defendants simultaneously moved to extend their own expert disclosure deadline so that their disclosure of expert opinion could include any opinions formed as a result of the IME.  <u>Id.</u>  The district court denied defendants motion for the Rule 35 IME and the Seventh Circuit affirmed, finding no abuse of discretion.  <u>Id.</u>

The court is granted discretion to grant or deny a motion to extend, and similarly, whether to grant a Rule 35 motion after applicable deadlines have passed.  <u>Id.</u>  Absent evidence of bad faith or ulterior motives on the part of the movant, the results in the <u>Shumaker</u> and <u>Miksis</u> cases seem harsh, especially in light of the Supreme Court's admonition that the rules of civil procedure exist to make sure parties are fully informed of the facts of their case prior to going to trial.  <u>Schlagenhauf</u>, 379 U.S. at 114-115.

In addition, seven days after briefing for the defendants' motion to compel the Rule 35 IME was completed, plaintiffs filed a motion seeking to

amend the scheduling order once again. See Docket No. 75. In that motion, plaintiffs seek to extend their own expert designation deadline to September 2, 2008, to allow plaintiffs to make additional designations. Id. In this motion to extend, plaintiffs state that they "have no objection to extending the Defendants' expert deadline to November 1, 2008." Id.

Regardless of whether the district court grants plaintiffs' motion to extend these deadlines, this court finds that the making of that motion by plaintiffs and the statement that they do not object to extending defendants' expert designation deadline, operates to waive any argument plaintiffs might make as to the timeliness of defendants' Rule 35 motion. Accordingly, the court finds defendants' motion to be timely.[2]

### 5. Form of the Motion

Rule 35 specifies that, in making a motion for an IME pursuant to the rule, the movant "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." The defendants' motion specifies the place of the examination and the identity and specialty of the person who will perform the IME, but fails to fill in the other details required by the rule.

---

[2] Because an extension of the defendants' expert designation deadline is the subject of two motions, the present motion addressed to this court and the plaintiffs' motion addressed to the district court, this court abstains from deciding that issue in favor of the district court deciding it.

Rather than supplying those details by fiat, the court prefers to allow the parties an opportunity to arrange the time, place, manner and conditions of the IME with Dr. Goldner in a fashion that is mutually agreeable to everyone. Accordingly, the court leaves these details to the parties to work out between themselves. If the parties are unable to reach agreement as to these details, they may contact the court and the court will supply the details by further order.

## CONCLUSION

The defendants' motion to compel a Rule 35 IME with Dr. Goldner [Docket No. 58] is granted as discussed more fully above. Upon presentation of appropriate documentation for the same, defendants shall pay the costs of Mrs. DeNeui's travel to attend this deposition, including mileage, lodging, meals, and any lost pay experienced by Mr. DeNeui. The costs for mileage and lodging shall be provided to Mrs. DeNeui by defendants prior to the scheduled IME.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 58(g)(2).

Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require review by the district court.

Dated August 27, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE