UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LAURIE DeNEUI and<br>TERRY DeNEUI,<br><br>   Plaintiffs,<br><br> vs.<br><br>DR. BRYAN WELLMAN and<br>DR. WILSON ASFORA, P.C., d/b/a<br>Sioux Falls Neurosurgical<br>Associates,<br><br>   Defendants. | CIV. 07-4172-KES<br><br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>PLAINTIFFS' MOTION IN<br>LIMINE PART 2 |

  Plaintiffs, Laurie DeNeui and Terry DeNeui, move to exclude evidence pertaining to the settlement agreement that the DeNeuis reached with a third party, Medtronic Sofamor Danek USA, Inc. During the final pretrial conference, a question was raised as to whether the settlement agreement should be set off from any judgment or whether the jury should apportion the level of fault between defendants and Medtronic. The court reserved ruling on the motion and the related issue of whether the jury would apportion fault because it appeared that the parties may resolve the issue.

  The parties were unable to reach an agreement. The DeNeuis argue that defendants, Dr. Wellman and Dr. Asfora, must establish that Medtronic was a joint tortfeasor and that the jury should apportion fault, which would then allow the court to deduct any judgment against defendants on a pro rata basis.

Defendants contend that under South Dakota law, the DeNeuis' settlement with Medtronics must be subtracted from any judgment on a pro tanto basis.

"[T]he term 'joint tort-feasors' means 'two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all of some of them.' " SDCL 15-8-11. "The common obligation contemplated by the [Uniform Contribution among Tortfeasors' Act] is the common liability of the Tortfeasors to suffer adverse judgment at the instance of the injured person whether or not the injured person elects to impose it." *Burmeister v. Youngstrom*, 139 N.W.2d 226, 231 (S.D. 1965) (internal quotations omitted). In determining whether there is a joint tortfeasor, "the court will consider the issues as framed by the pleadings in determining the question of whether a party is a joint tort-feasor." *Schick v. Rodenburg*, 397 N.W.2d 464, 468 (S.D. 1986). The court is not limited, however, to the pleadings and may look to other documents in the record. *See id.* at 468 (identifying "a joint tort-feasor" because it was "[i]mplicit in the pleadings and expressly stated in [a] release"). A settling party may be construed as a joint tortfeasor "even though the settling party has never been judicially determined to be a joint tort-feasor." *See id.* at 467 (citing *Degen v. Bayman*, 241 N.W.2d 703, 707-08 (1976)).

The DeNeuis allege in their complaint that Laurie was injured as a result of an anterior cervical diskectomy and fusion that involved the off-label use of

2

BMP. (Docket 1 at 2-3.) They claim that the surgery and the off-label use of BMP constituted medical malpractice and that Laurie's informed consent was not obtained. (Docket 1 at 3-4.) The DeNeuis claim that the surgery and BMP caused Laurie to experience difficulty breathing and turning her neck. (Docket 1 at 4.) They also claim that if Laurie had been told about the off-label use of BMP, she would not have sustained her injuries because she would not have consented to the surgery. (Docket 1 at 4.)

The DeNeuis acknowledged in their brief opposing defendants' motion for partial summary judgment that Medtronic manufactured the BMP that was used in the surgery. (Docket 149 at 2.) In their brief they also contend that the use of BMP off-label caused their alleged injuries. (Docket 149 at 8-9.) Any potential liability on Medtronic's behalf would have stemmed from the "same injury" that the DeNeuis allege were caused by Dr. Wellman. *See* SDCL 15-8-11. The settlement agreement with Medtronic explicitly releases "any and every claim that could have been raised against [Medtronic] in a lawsuit concerning Laurie DeNeuis' spinal surgery, including any and every claim set forth or that could have been set forth against [Medtronic] in" the present lawsuit against defendants. (Docket 212, Ex. A at 1.) Moreover, the DeNeuis previously informed the court in support of their motion seeking an extension of the deadlines that they were preparing to file "a separate action against Medtronic in this Court and then [would seek] permission to consolidate the cases."

3

(Docket 97 at 5.) Medtronic and defendants are therefore properly considered joint tortfeasors based on the record before the court. *Cf. Schick*, 397 N.W.2d at 468 ("Implicit in the pleadings and expressly stated in paragraph 10 of the . . . release, is the allegation that [the settling party] is a joint tort-feasor with [the nonsettling parties]."). The fact that Medtronic was never made a party in this case does not preclude it from being identified as a joint tortfeasor.[1] *See id.*

Under SDCL 15-8-17, a "release by the injured person of one joint tort-feasor, whether before or after judgment, . . . reduces the claim against the other tort-feasors in the amount of the consideration paid for the release." Here, the DeNeuis have released Medtronic from any claims relating to their injuries. Therefore, any judgment against the remaining tortfeasors must be reduced by the amount that Medtronic paid for the release. *See Schick*, 397 N.W.2d at 468 (finding that "SDCL 15-8-17 is applicable" after concluding that the settling party was properly considered a joint tortfeasor along with the nonsettling parties.). *See also Duncan v. Pennington County Housing Auth.*, 283 N.W.2d 546, 552 (S.D. 1979) (recognizing that "where one liable potentially, but not in fact, makes a settlement[,] . . . the majority view is that whether or not the person released was in fact a joint tortfeasor, the amount paid for the release . . . must reduce pro tanto the injured person judgment against another." (internal quotation and citation omitted)).

---

[1] The DeNeuis do not identify any authority indicating that joint tortfeasors only exist if they are identified as such in the pleadings.

4

The DeNeuis' contention that the amount of any judgment against defendants should be reduced pro rata after the jury has apportioned fault between Medtronic and defendants is without merit. South Dakota has a strong public policy against double recovery for an injury. *See Schick*, 397 N.W.2d at 469 (emphasizing "the rule that there should be but one satisfaction for a wrong because of the strong policy against unjust enrichment" (citations omitted)). If a pro rata deduction was allowed based on the jury's apportionment of fault, the DeNeuis might recover more than what the compensatory damage award would have been had Medtronic been made a co-defendant. The potential for double recovery is eliminated, however, if the jury determines the total amount of the damages and the court subsequently deducts the settlement with Medtronic from any award against defendants.

The DeNeuis rely on *Olson v. Fairmont Tamper*, No. 00-4235 (D.S.D. June 17, 2002), to support their argument that the jury must apportion fault between Medtronic and defendants even though Medtronic is not a party to this case. *See id.* at *7 ("In cases such as this where the plaintiff has agreed to indemnify the settling defendant against all possible claims by the nonsettling defendants, the trial court should dismiss the settling defendant from the case but still submit to the jury the fault of all parties, including that of the settling defendant." (citing *Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn. 1978))). The facts in *Olson*, however, are materially distinguishable from the facts in this

5

case. In *Olson*, the remaining nonsettling defendants wanted the jury to apportion any fault between them and the settling defendants. *Id.* at *6-8. The court was therefore concerned with "protect[ing] the rights of the current defendants" and "impair[ing] the rights of the instant Defendants to either a pro rata determination of their fault or to contribution from the settling defendants." *Id.* at 7, 10. Here, defendants are not asking for the jury to apportion fault or for a pro rata reduction. Rather, defendants only seek a pro tanto reduction if the jury returns an unfavorable verdict against them. Thus, the underlying concerns in *Olson* are not present in this case.

Furthermore, the South Dakota Supreme Court in *Schick v. Rodenburg*, 397 N.W.2d 464 (S.D. 1986), refused to follow the holding in *Frey*.[2] In *Schick*, the South Dakota Supreme Court recognized that the Minnesota Supreme Court held in *Frey* that "a plaintiff can make a double recovery by entering into a Pierringer release if it is determined that the settling party was not liable." *Id.* at 467 n.5 (citations omitted). The South Dakota Supreme Court refused, however, to adopt the position expressed in *Frey*. *Id.* at 469 ("There should be but one satisfaction for a wrong because of the strong policy against unjust enrichment. . . . Therefore, . . . the release that . . . permits a double recovery under the laws of Wisconsin and Minnesota, contravenes South Dakota public

---

[2] *Olson* cited *Frey* to support the proposition that the jury should apportion fault between settling and nonsettling parties. *Olson*, No. 00-4235 at * 7.

policy."). Accordingly, the court will follow the guidance set forth in *Schick* rather than *Frey*.

The DeNeuis seek to have the jury apportion fault for purposes of obtaining a pro rata deduction rather than a pro tanto deduction. The DeNeuis argue that "Medtronic's fault is relatively minor in comparison to Defendants' fault." (Docket 222 at 3.) Defendants do not allege differently. Assuming this is true, then the jury would apportion the fault accordingly. If a pro rata reduction was then utilized based on the jury's apportionment of fault, it would be possible for the DeNeuis to be overcompensated.[3] But as explained above, South Dakota law does not allow for such "double recovery." *See Schick*, 397 N.W.2d at 469. Accordingly, there is no reason to risk confusing the jury by asking it to apportion the fault between defendants and Medtronic, a nonparty in the case, because the apportionment could only be used to reach an otherwise impermissible result, unjust compensation.[4]

The DeNeuis also rely on SDCL 15-8-15 to support their argument that the jury must apportion fault. SDCL 15-8-15 states that "[w]hen there is such

---

[3] For example, if the jury found that Medtronic was 10 percent at fault, that defendants were 90 percent at fault, and that the DeNeuis were injured in the amount of $100,000, defendants would have to pay $90,000. If Medtronic paid more than $10,000 for the release, then the DeNeuis will be overcompensated because they will have received more than the $100,000 awarded by the jury.

[4] Defendants have not asked for the jury to apportion fault. Defendants do not argue that Medtronic is liable for the DeNeuis' alleged injuries. They also do not assert a cross-claim against Medtronic.

a disproportion of fault among join tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares." A plain reading of the statute reveals that it does not establish when the jury must apportion fault. Rather, the statute establishes that a pro rata reduction is required if a jury determines the relative degrees of fault. *See id.* ("[T]he relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares."). Thus, the statute establishes when a pro rata deduction is required; it does not establish when a jury must apportion fault. If the DeNeuis wanted the jury to apportion the fault between Medtronic and defendants, then it was within their right to bring their claims against Medtronic directly rather than settle.

The jury will determine the extent of the DeNeuis' damages and whether defendants' actions caused the DeNeuis' injuries. Because Medtronic and defendants are joint tortfeasors, the court will deduct the amount of the settlement with Medtronic from the award against defendants, if there is one, pursuant to SDCL 15-8-17. This approach complies with South Dakota law and also reduces the chances of jury confusion without interfering with either party's rights for a jury trial.

With regard to the motion in limine to exclude evidence pertaining to the settlement with Medtronic, the settlement does not have "any tendency to

8

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Civ. P. 401. The evidence is therefore excluded because it is not relevant with regard to any issue to be decided by the jury. *See* Fed. R. Civ. P. 402. To the extent that it may be relevant, the court finds that the probative value is substantially outweighed by the danger that the jury will become confused or misled. *See* Fed. R. Civ. P. 403. Thus, the DeNeuis' motion in limine to exclude evidence pertaining to the settlement with Medtronic is granted. It is

ORDERED that the jury will not be instructed to apportion the fault, if any, between Medtronic and defendants. Any judgment against defendants will be reduced by the court by the amount of the settlement with Medtronic.

IT IS FURTHER ORDERED that the DeNeuis' motion in limine to exclude evidence of the settlement with Medtronic (Docket 173) is granted.

Dated August 20, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE