FILED
SEP 03 2010



CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LAURIE DeNEUI and<br>TERRY DeNEUI,<br><br>     Plaintiffs,<br><br>vs.<br><br>DR. BRYAN WELLMAN and<br>DR. WILSON ASFORA, P.C, d/b/a<br>Sioux Falls Neurosurgical Associates,<br><br>    Defendants. | CIV. 07-4172-KES<br><br><br>**FINAL<br>INSTRUCTIONS<br>TO THE JURY** |

**TABLE OF CONTENTS**

FINAL INSTRUCTION
    NO. 1 – INTRODUCTION AND DEFINITIONS . . . . . . . . . . . . . . . . . . . 1
    NO. 2 – IMPEACHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    NO. 3 – CORPORATE EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . 3
    NO. 4 – PRINCIPAL AND AGENT SUED . . . . . . . . . . . . . . . . . . . . 4
    NO. 5 – BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    NO. 6 – MEDICAL MALPRACTICE . . . . . . . . . . . . . . . . . . . . . . . . 6
    NO. 7 – INFORMED CONSENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    NO. 8 – DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    NO. 9 – LOSS OF CONSORTIUM . . . . . . . . . . . . . . . . . . . . . . . . 12
    NO. 10 – FUTURE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    NO. 11 – PRESENT VALUE CALCULATIONS . . . . . . . . . . . . . . . . . 15
    NO. 12 – MORTALITY TABLE . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    NO. 13 – PREJUDGMENT INTEREST . . . . . . . . . . . . . . . . . . . . . . 19
    NO. 14 – DUTIES DURING DELIBERATIONS . . . . . . . . . . . . . . . . . 20

VERDICT FORM

FINAL INSTRUCTION NO. 1 – INTRODUCTION AND DEFINITIONS

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because all are important. This is true even though some of those I gave you at the beginning of and during the trial are not repeated here.

The instructions I am about to give you now as well as those I gave you earlier are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my oral instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be.

1

FINAL INSTRUCTION NO. 2 – IMPEACHMENT

In Preliminary Instruction No. 3, I instructed you generally on the credibility of witnesses. I now give you this further instruction on how the credibility of a witness can be "impeached" and how you may treat certain evidence.

A witness may be discredited or impeached by contradictory evidence; by a showing that the witness testified falsely concerning a material matter; or by evidence that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness's present testimony. If earlier statements of a witness were admitted into evidence, they were not admitted to prove that the contents of those statements were true. Instead, you may consider those earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of the witness, and therefore whether they affect the credibility of that witness.

If you believe that a witness has been discredited or impeached, it is your exclusive right to give that witness's testimony whatever weight you think it deserves.

If you believe that any witness testifying in this case has knowingly sworn falsely to any material matter in this case, then you may reject all of the testimony of the witness.

FINAL INSTRUCTION NO. 3 – CORPORATE EMPLOYEES

The defendant Wilson Asfora P.C., d/b/a Sioux Falls Neurosurgical Associates, is a corporation that can act only through its officers and employees. Any act or omission of an officer or employee within the scope of his or her employment is the act or omission of the corporation for which he or she was then acting. Therefore, any omission, failure, or negligent act of any officer or employee of a corporation within the scope of his or her employment is held at law to be the omission, failure, or negligence of the corporation.

FINAL INSTRUCTION NO. 4 – PRINCIPAL AND AGENT SUED

The defendants are sued as principal and agent. Wilson Asfora, P.C., d/b/a Sioux Falls Neurosurgical Associates, is the principal, and Dr. Bryan Wellman is its agent. If you find the agent is liable, then you must find the principal is also liable. But if you find the agent is not liable, then you must find that the principal is not liable.

FINAL INSTRUCTION NO. 5 – BURDEN OF PROOF

In civil actions, the party who asserts the affirmative of an issue must prove that issue by the greater convincing force of the evidence.

Greater convincing force means that after weighing the evidence on both sides there is enough evidence to convince you that something is more than likely true than not true. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue has the greater convincing force, then your finding upon the issue must be against the party who has the burden of proving it. In this case Laurie DeNeui has brought two causes of action against the defendants and may recover under either or both if she proves the respective elements of each cause of action. In determining whether or not an issue has been proved by the greater convincing force of the evidence, you should consider all of the evidence bearing upon that issue, regardless of who produced it.

FINAL INSTRUCTION NO. 6 – MEDICAL MALPRACTICE

Dr. Wellman is liable for damages proximately caused by medical malpractice if each of the following are established by Laurie DeNeui by the greater weight of the evidence:

**One, that Dr. Wellman violated the standard of care owed to Laurie DeNeui in performing the cervical diskectomy and fusion surgery on her;**

In performing professional services for a patient, a specialist in a particular field of medicine has the duty to possess that degree of knowledge and skill ordinarily possessed by physicians of good standing engaged in the same field of specialization in the United States.

A specialist also has the duty to use that care and skill ordinarily exercised under similar circumstances by physicians in good standing engaged in the same field of specialization in the United States and to be diligent in an effort to accomplish the purpose for which the physician is employed.

A failure to perform any such duty is medical malpractice.

The fact that an unfortunate or bad condition resulted to Laurie DeNeui does not alone prove that Dr. Wellman committed medical malpractice, but it may be considered, along with other evidence, in determining the issue of medical malpractice.

In determining whether Dr. Wellman committed medical malpractice in the selection of a method of treatment, you should consider all the attendant circumstances at the time he acted. Viewed in light of all the facts and the state of knowledge of the profession at the time Dr. Wellman acted, the proper test is whether the treatment employed was in conformity with the accepted standards of skill and care at the time.

You must decide whether Dr. Wellman possessed and used the knowledge, skill, and care which the law demands based on the testimony and evidence from members of the profession who testified as expert witnesses.

**And two, that such failure is the legal cause of any damage, injury, or loss suffered or experienced by Laurie DeNeui.**

A legal cause is a cause that produces a result in a natural and probable sequence, and without which the result would not have occurred.

The term "legal cause" means an immediate cause which, in the natural or probable sequence, produces the injury complained of. For legal cause to exist, the harm suffered must be a foreseeable consequence of the act complained of. In other words, liability cannot be based on mere speculative possibilities or circumstances and conditions remotely connected to the events leading up to an injury. Dr. Wellman's conduct must have such an effect in producing the harm as to lead reasonable people to regard it as a cause of Laurie DeNeui's injuries.

The legal cause need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury. However, for legal cause to exist, you must find that the conduct complained of was a substantial factor in bringing about the harm.

If you find that both of these elements have been proved by the greater convincing force of the evidence, your verdict must be for Laurie DeNeui on her medical malpractice claim. You should then determine the amount of damages that she is entitled to, if any. If, on the other hand, either of these elements have not been proved by the greater convincing force of the evidence, then your verdict must be for Dr. Wellman on this issue.

FINAL INSTRUCTION NO. 7 – INFORMED CONSENT

Dr. Wellman is liable for damages proximately caused by the failure to obtain informed consent if all of the following are established by Laurie DeNeui by the greater weight of the evidence:

**One, Dr. Wellman treated Laurie DeNeui without obtaining her informed consent;**

A physician has the duty to obtain a patient's informed consent to medical treatment before the physician provides that treatment. The patient's informed consent may be express or implied from the circumstances.

To obtain Laurie DeNeui's informed consent, Dr. Wellman must have disclosed to her all material information necessary for her to make an informed decision regarding the proposed treatment.

Information is generally regarded as material if a reasonable patient would attach significance to the information when deciding whether to submit to the proposed medical treatment or procedure.

Dr. Wellman had the duty to disclose to Laurie DeNeui the nature of the procedure, the material benefits of the procedure, the material risks associated with the procedure, the likelihood those risks will occur, and the consequences of remaining untreated. If an alternative procedure is reasonably appropriate, Dr. Wellman had the duty to disclose the material risks and benefits associated with that alternative procedure as well.

In determining whether Dr. Wellman obtained Laurie DeNeui's informed consent, you should consider all the attendant circumstances at the time he acted.

Dr. Wellman was not required to discuss extremely remote risks, risks already known to Laurie DeNeui, or those risks of which persons of average sophistication are aware.

**Two, an undisclosed material risk occurred and caused injury to Laurie DeNeui;**

"Legal cause" is defined for you in Final Instruction No. 6.

**And three, if the undisclosed risk had been disclosed, a reasonable person in Laurie DeNeui's position would not have agreed to the proposed treatment.**

8

If you find that each of the three elements has been proved by the greater convincing force of the evidence, your verdict must be for Laurie DeNeui on the issue of informed consent. You should then determine the amount of damages that she is entitled to, if any. If, on the other hand, any of these elements have not been proved by the greater convincing force of the evidence, then your verdict must be for Dr. Wellman on this issue.

FINAL INSTRUCTION NO. 8 – DAMAGES

If you decide for Laurie DeNeui on the question of liability on either the medical malpractice or the informed consent causes of action, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of loss or harm suffered in person or property proved by the evidence to have been legally caused by Dr. Wellman's conduct, taking into consideration the nature, extent, and duration of the injury, whether such loss or harm could have been anticipated or not, namely:

(1) The reasonable value of necessary medical care, treatment, and services received and the reasonable value of the necessary expense of medical care, treatment and services reasonably certain to be received in the future;

(2) The disability and disfigurement suffered by Laurie DeNeui;

(3) The pain and suffering, mental anguish, and loss of capacity of the enjoyment of life experienced in the past and reasonably certain to be experienced in the future as a result of the injuries sustained by Laurie DeNeui;

(4) The earnings Laurie DeNeui has lost, if any, from any source from the date of the injury until the date of trial; and

(5) Such sum as will reasonably compensate Laurie DeNeui for whatever loss of earning capacity you find that she has suffered as a result of the injury. The factors to be considered in determining the measure of damages for loss of earning capacity include:

(a) What Laurie DeNeui earned before the injury;
(b) What Laurie DeNeui is capable of earning after the injury;
(c) Laurie DeNeui's prior ability;
(d) The extent to which the injuries affect Laurie DeNeui's power to earn;
(e) Laurie DeNeui's age, life expectancy, physical

10

           condition, occupation, skill; and

(f)      Habits of industry.

Whether any of these elements or damages have been proved by the evidence is for you to determine. Your verdict must be based on the evidence and not upon speculation, guesswork, or conjecture.

FINAL INSTRUCTION NO. 9 – LOSS OF CONSORTIUM

If you find that the defendants are liable to Laurie DeNeui, you must then determine the amount of money which will reasonably compensate Terry DeNeui for any of the following elements of damages which you find were suffered by Terry DeNeui and legally caused by Dr. Wellman's wrongful conduct:

(1)     The reasonable value of Laurie DeNeui's services, aid, comfort, society, companionship, and conjugal affections that Terry DeNeui has been deprived; and

(2)     The present cash value of Laurie DeNeui's services, aid, comfort, society, companionship, and conjugal affections that Terry DeNeui is reasonably certain to be deprived of in the future.

Whether any of the elements of damages have been proved by the evidence is for you to determine.

12

FINAL INSTRUCTION NO. 10 – FUTURE DAMAGES

The law allows damages for detriment reasonably certain to result in the future. By their nature, all future happenings are somewhat uncertain. The fact and cause of the loss must be established with reasonable certainty. Once future detriment is established, the law does not require certainty as to the amount of such damages. Thus, once the existence of such damages is established, recovery is not barred by uncertainty as to the measure or extent of damages, or the fact that they cannot be measured with exactness. On the other hand, an award of future damages cannot be based on conjecture, speculation, or mere possibility.

If you should find that the Laurie DeNeui is entitled to a verdict, and further find that the evidence in the case establishes either:

(1)     a reasonable likelihood of future medical expenses; or

(2)     a reasonable likelihood of loss of future earnings; or

(3)     a reasonable likelihood that Terry DeNeui is entitled to a verdict for loss of consortium, which is the deprivation of the services, aid, comfort, society, companionship, and conjugal affections of the spouse;

then you must ascertain the present value in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not be sustained until some future date.

Under these circumstances, the result is that the DeNeuis will in effect be reimbursed in advance of the loss, and so will have the use of money which the plaintiffs would not have received until some future date, but for the verdict.

In order to make a reasonable adjustment for the present use of money representing a lump-sum payment of anticipated future loss, the law requires that you discount, or reduce to its present value, the amount of the anticipated

13

future loss, by considering (1) the interest rate or return which the plaintiffs could reasonably be expected to receive on an investment of the lump-sum together with (2) the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of future loss whatever that amount would be reasonably certain to earn or return, if invested at such rate of interest over such period of time; and include in the verdict an award for only the present worth—the reduced amount of anticipated future loss.

This computation is made by using the so-called "present value" table which is attached to these instructions for your use. Directions on how to use these tables are included in the following instruction.

Bear in mind that your duty to discount to present value applies only to loss of future earnings, future medical expenses, and future loss of consortium. Damages for future pain and suffering, future mental anguish, disability, and disfigurement are not subject to any reduction for the present value of such money.

There has been evidence presented to you concerning the claim for future medical expenses and future earnings in the form of expert testimony. However, it is your duty to determine whether the expert's adjustment for present value was reasonable, and if not, you should make your own adjustment for present value of any sum you determine the DeNeuis are entitled to for the above losses, if any.

Finally, in determining the present value of future damages, you may also take into consideration the effect of inflation or deflation on the future damages.

14

FINAL INSTRUCTION NO. 11 – PRESENT VALUE CALCULATIONS

The attached tables may be used to calculate the present value of future expenses. This calculation requires that you make three determinations.

First, determine the number of years that the future expenses will be incurred. That number is designated as "n" in the attached tables.

Then, determine the net discount rate. That net discount rate is the interest rate which the DeNeuis could reasonably expect to receive on an investment of the lump-sum payment minus the inflation rate.

Finally, determine the annual amount of the future expenses to be incurred, without consideration of inflation.

Using the number of years (n value) and the net discount rate, ascertain the factor from the table. Multiply the annual amount of the future expenses by the appropriate factor from the table to calculate the present value of those future expenses.

15

PRESENT VALUE TABLE

PRESENT VALUE CALCULATIONS
PRESENT VALUE OF 1 PER PERIOD RECEIVED FOR n PERIODS
(Uniform Series)

| n | 1% | 2% | 3% | 4% | 5% | 6% | 7% | 8% |
|---|---|---|---|---|---|---|---|---|
| 1 | 0.9901 | 0.9804 | 0.9709 | 0.9615 | 0.9524 | 0.9434 | 0.9346 | 0.9259 |
| 2 | 1.9704 | 1.9416 | 1.9135 | 1.8861 | 1.8594 | 1.8334 | 1.8080 | 1.7833 |
| 3 | 2.9410 | 2.8839 | 2.8286 | 2.7751 | 2.7232 | 2.6730 | 2.6243 | 2.5771 |
| 4 | 3.9020 | 3.8077 | 3.7171 | 3.6299 | 3.5460 | 3.4651 | 3.3872 | 3.3121 |
| 5 | 4.8534 | 4.7135 | 4.5797 | 4.4518 | 4.3295 | 4.2124 | 4.1002 | 3.9927 |
| 6 | 5.7955 | 5.6014 | 5.4172 | 5.2421 | 5.0757 | 4.9173 | 4.7665 | 4.6229 |
| 7 | 6.7282 | 6.4720 | 6.2303 | 6.0021 | 5.7864 | 5.5824 | 5.3893 | 5.2064 |
| 8 | 7.6517 | 7.3255 | 7.0197 | 6.7327 | 6.4632 | 6.2098 | 5.9713 | 5.7466 |
| 9 | 8.5660 | 8.1622 | 7.7861 | 7.4353 | 7.1078 | 6.8017 | 6.5152 | 6.2469 |
| 10 | 9.4713 | 8.9826 | 8.5302 | 8.1109 | 7.7217 | 7.3601 | 7.0236 | 6.7101 |
| 11 | 10.3676 | 9.7868 | 9.2526 | 8.7605 | 8.3064 | 7.8869 | 7.4987 | 7.1390 |
| 12 | 11.2551 | 10.5753 | 9.9540 | 9.3851 | 8.8633 | 8.3838 | 7.9427 | 7.5361 |
| 13 | 12.1337 | 11.3484 | 10.6350 | 9.9856 | 9.3936 | 8.8527 | 8.3577 | 7.9038 |
| 14 | 13.0037 | 12.1062 | 11.2961 | 10.5631 | 9.8986 | 9.2950 | 8.7455 | 8.2442 |
| 15 | 13.8651 | 12.8493 | 11.9379 | 11.1184 | 10.3797 | 9.7122 | 9.1079 | 8.5595 |
| 16 | 14.7179 | 13.5777 | 12.5611 | 11.6523 | 10.8378 | 10.1059 | 9.4466 | 8.8514 |
| 17 | 15.5623 | 14.2919 | 13.1661 | 12.1657 | 11.2741 | 10.4773 | 9.7632 | 9.1216 |
| 18 | 16.3983 | 14.9920 | 13.7535 | 12.6593 | 11.6896 | 10.8276 | 10.0591 | 9.3719 |
| 19 | 17.2260 | 15.6785 | 14.3238 | 13.1339 | 12.0853 | 11.1581 | 10.3356 | 9.6036 |
| 20 | 18.0456 | 16.3514 | 14.8775 | 13.5903 | 12.4622 | 11.4699 | 10.5940 | 9.8181 |
| 21 | 18.8570 | 17.0112 | 15.4150 | 14.0292 | 12.8212 | 11.7641 | 10.8355 | 10.0168 |
| 22 | 19.6604 | 17.6580 | 15.9369 | 14.4511 | 13.1630 | 12.0416 | 11.0612 | 10.2007 |
| 23 | 20.4558 | 18.2922 | 16.4436 | 14.8568 | 13.4886 | 12.3034 | 11.2722 | 10.3711 |
| 24 | 21.2434 | 18.9139 | 16.9355 | 15.2470 | 13.7986 | 12.5504 | 11.4693 | 10.5288 |
| 25 | 22.0232 | 19.5235 | 17.4131 | 15.6221 | 14.0939 | 12.7834 | 11.6536 | 10.6748 |
| 26 | 22.7952 | 20.1210 | 17.8768 | 15.9828 | 14.3752 | 13.0032 | 11.8258 | 10.8100 |
| 27 | 23.5596 | 20.7069 | 18.3270 | 16.3296 | 14.6430 | 13.2105 | 11.9867 | 10.9352 |
| 28 | 24.3164 | 21.2813 | 18.7641 | 16.6631 | 14.8981 | 13.4062 | 12.1371 | 11.0511 |
| 29 | 25.0658 | 21.8444 | 19.1885 | 16.9837 | 15.1411 | 13.5907 | 12.2777 | 11.1584 |
| 30 | 25.8077 | 22.3965 | 19.6004 | 17.2920 | 15.3725 | 13.7648 | 12.4090 | 11.2578 |
| 31 | 26.5423 | 22.9377 | 20.0004 | 17.5885 | 15.5928 | 13.9291 | 12.5318 | 11.3498 |
| 32 | 27.2696 | 23.4683 | 20.3888 | 17.8736 | 15.8027 | 14.0840 | 12.6466 | 11.4350 |
| 33 | 27.9897 | 23.9886 | 20.7658 | 18.1476 | 16.0025 | 14.2302 | 12.7538 | 11.5139 |
| 34 | 28.7027 | 24.4986 | 21.1318 | 18.4112 | 16.1929 | 14.3681 | 12.8540 | 11.5869 |
| 35 | 29.4086 | 24.9986 | 21.4872 | 18.6646 | 16.3742 | 14.4982 | 12.9477 | 11.6546 |
| 36 | 30.1075 | 25.4888 | 21.8323 | 18.9083 | 16.5469 | 14.6210 | 13.0352 | 11.7172 |
| 37 | 30.7995 | 25.9695 | 22.1672 | 19.1426 | 16.7113 | 14.7368 | 13.1170 | 11.7752 |
| 38 | 31.4847 | 26.4406 | 22.4925 | 19.3679 | 16.8679 | 14.8460 | 13.1935 | 11.8289 |

PRESENT VALUE TABLE  CONT.

PRESENT VALUE TABLE CONT.

| n | 1% | 2% | 3% | 4% | 5% | 6% | 7% | 8% |
|---|-----|-----|-----|-----|-----|-----|-----|-----|
| 39 | 32.1630 | 26.9026 | 22.8082 | 19.5845 | 17.0170 | 14.9491 | 13.2649 | 11.8786 |
| 40 | 32.8347 | 27.3555 | 23.1148 | 19.7928 | 17.1591 | 15.0463 | 13.3317 | 11.9246 |
| 41 | 33.4997 | 27.7995 | 23.4124 | 19.9931 | 17.2944 | 15.1380 | 13.3941 | 11.9672 |
| 42 | 34.1581 | 28.2348 | 23.7014 | 20.1856 | 17.4232 | 15.2245 | 13.4524 | 12.0067 |
| 43 | 34.8100 | 28.6616 | 23.9819 | 20.3708 | 17.5459 | 15.3062 | 13.5070 | 12.0432 |
| 44 | 35.4555 | 29.0800 | 24.2543 | 20.5488 | 17.6628 | 15.3832 | 13.5579 | 12.0771 |
| 45 | 36.0945 | 29.4902 | 24.5187 | 20.7200 | 17.7741 | 15.4558 | 13.6055 | 12.1084 |
| 46 | 36.7272 | 29.8923 | 24.7754 | 20.8847 | 17.8801 | 15.5244 | 13.6500 | 12.1374 |
| 47 | 37.3537 | 30.2866 | 25.0247 | 21.0429 | 17.9810 | 15.5890 | 13.6916 | 12.1643 |
| 48 | 37.9740 | 30.6731 | 25.2667 | 21.1951 | 18.0772 | 15.6500 | 13.7305 | 12.1891 |
| 49 | 38.5881 | 31.0521 | 25.5017 | 21.3415 | 18.1687 | 15.7076 | 13.7668 | 12.2122 |
| 50 | 39.1961 | 31.4236 | 25.7298 | 21.4822 | 18.2559 | 15.7619 | 13.8007 | 12.2335 |

17

FINAL INSTRUCTION NO. 12 – MORTALITY TABLE

According to the mortality table, Laurie DeNeui's life expectancy, as a 48-year old female is 82.4 years of age, or 34.4 more years.

The court takes judicial notice of this fact, which is now evidence for you to consider.

You should note the restricted significance of this evidence. Life expectancy shown by the mortality table is merely an estimate of the probable average length of life of all persons of a given age in the United States. It is an estimate because it is based on a limited record of experience. Because it reflects averages, the table applies only to one who has the same health and exposure to danger as the average person that age.

Therefore, in connection with the mortality table evidence, you should also consider other evidence bearing on life expectancy. For example, you should consider the occupation, health, habits, and activities of the person whose life expectancy is in question.

18

FINAL INSTRUCTION NO. 13 – PREJUDGMENT INTEREST

Any person who is entitled to recover damages is entitled to recover interest thereon from the day that the loss or damage occurred except:

(1)     During a period of time, the person liable for the damages was prevented by law, or an act of the person entitled to recover the damages from paying the damages, or

(2)     Interest is not recoverable on damages which will occur in the future, punitive damages, or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life, or loss of society and companionship.

You must decide:

(1)     The amount of damages, if any; and

(2)     The amount of damages which are subject to prejudgment interest, if any; and

(3)     The date or dates on which the damages occurred.

If you return a verdict for Laurie DeNeui, you must indicate on the verdict form whether you find that she is entitled to prejudgment interest, and if so, the amount of damages upon which interest is granted and the beginning date of such interest. Based upon your findings, the Court will calculate the amount of interest Laurie DeNeui is entitled to recover.

19

FINAL INSTRUCTION NO. 14 – DUTIES DURING DELIBERATIONS

In conducting deliberations and returning your verdict, there are certain rules you must follow.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach an agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or court security officer, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. **Remember that you should not tell anyone—including me—how your votes stand numerically.**

*Fourth*, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

*Finally*, the verdict form is simply the written notice of the decision that

20

you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal or court security officer that you are ready to return to the courtroom.

Dated September _3_, 2010.


KAREN E. SCHREIER
CHIEF JUDGE